Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
E-mail:      matthewmonforton@yahoo.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BRAD MOLNAR,<br><br>          Plaintiff,<br><br>vs.<br><br>JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission;<br><br>          Defendants. | Case No. 26-41-H-DWM<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Brad Molnar respectfully moves this Court for leave to conduct expedited discovery prior to the Court's ruling on his Motion for Preliminary Injunction. Commissioner Molnar seeks two specific categories of discovery:

- Production of an email dated March 20, 2026, sent by Defendant Jennifer Fielder to Defendant Jeff Welborn, in which she stated — in substance — that Commissioner Molnar would be no more able to defend himself in the disciplinary hearing she knew was coming than a named PSC employee had been able to defend himself against allegations of alcoholism. Defendants have refused to produce an unredacted copy of the email, claiming a privacy privilege, and have already attempted to delete it from PSC employee inboxes.

- Deposition of Tina Limesand, the PSC's former Human Resources Director, who was terminated on or about May 4, 2026 after she refused to characterize the allegations against him as "sexual harassment."

This evidence goes directly to whether Defendants acted with the retaliatory and bad-faith intent that Commissioner Molnar's preliminary injunction motion places at the center of this case. Expedited discovery is warranted because this evidence may be further compromised, and the preliminary injunction hearing will require the Court to assess the credibility and motivation of Defendants' purported justifications for barring an elected public official from in-person participation in hearings conducted by Montana's most powerful regulatory agency.

## FACTUAL BACKGROUND

I    The March 20 Email: Commissioner Fielder Reveals the Disciplinary Hearing Against Commissioner Molnar is a Sham

David Sanders served as the Executive Director of the Montana Public Service Commission (PSC) from January 2024 through January 3, 2025. Doc. 15 (Sanders Decl.), ¶ 2. He was subsequently appointed Chief of Staff at the Commissioner of Securities & Insurance, a position he currently holds. *Id.*, ¶ 3.

2

On or about May 1, 2026, Mr. Sanders participated in a conference call that included one former PSC employee and two current PSC employees, all of whom he recognized from his tenure as Executive Director. *Id.* ¶¶4–5. Those participants told Mr. Sanders they had contacted him to inform him of what they described as a deeply troubling email chain between Commissioner Jennifer Fielder and Commissioner Jeff Welborn. *Id.* ¶6.

According to the conference call participants, the email chain contained a message authored by Commissioner Fielder in which she stated, in substance, that during an anticipated disciplinary or exclusion proceeding against Commissioner Molnar, he would be no more able to defend his conduct than a named PSC employee had been able to defend himself against allegations of alcoholism. *Id.* ¶7. The participants described this reference to the employee's alcoholism as gratuitous and shocking, given that the employee still works at the PSC and has no connection whatsoever to the Molnar matter. *Id.* ¶8.

The participants further reported that the email chain had been distributed to multiple PSC staff members beyond just Commissioners Fielder and Welborn, and that PSC leadership had thereafter sought to have the email chain "scrubbed" from all PSC employee inboxes. *Id.* ¶9. One current PSC employee personally witnessed the email vanish from his inbox while in the act of reading it — consistent with a

remote, real-time deletion executed by PSC leadership. *Id.* ¶10. After the call, Mr. Sanders conveyed all of this to Commissioner Molnar. *Id.* ¶11.

Through counsel, Commissioner Molnar filed a public records request on May 4, 2026, demanding immediate production of all emails exchanged between Commissioners Fielder and Welborn on March 20, 2026, that reference or concern Commissioner Molnar. Doc. 16, ¶ 4; Doc. 16-1.

On May 5, 2026, PSC Chief Legal Counsel Amanda Webster responded to the public records demand. Doc. 16-2. Rather than producing the email, Ms. Webster provided: (1) a message recall report generated by Microsoft Outlook on March 20, 2026, at 1:42 p.m., confirming that Commissioner Welborn had initiated a recall of the message entitled "Re: Media Interactions and Access in PSC Workspaces" — addressed to Neil Templeton, Jamey Petersen, and Will Rosquist, and blind-copied to Commissioner Fielder; (2) a redacted copy of Commissioner Fielder's 10:40 a.m. email from March 20, 2026; and (3) a privilege log asserting that the redacted portion of Commissioner Fielder's email was withheld because "there is a reasonable expectation of individual privacy regarding the redacted personnel information that clearly exceeds the interest of public disclosure." Doc. *Id.* Ms. Webster stated that a complete response to the public records request might not be forthcoming until May 19, 2026. *Id.* at 1.

4

The message recall report is itself highly significant. It confirms that Commissioner Welborn initiated an Outlook message recall on March 20, 2026 — the same day as Commissioner Fielder's email — directed to the inboxes of at least three PSC employees plus the PSC-wide listserv (PSC_PSC@mt.gov). Doc. 16-2 at 4. This is entirely consistent with the conference call participants' account of a real-time deletion of the email from staff inboxes. Doc. 15 (Sanders Decl.), ¶ 10.

Chief Counsel Webster insisted that the email at issue was "recalled" by Defendants rather than "deleted." Doc. 16-2 at 1. She does not explain why Defendants felt the need to recall the email.

The produced emails make the suppressed portion of Commissioner Fielder's email all the more significant. The email thread began with Commissioner Molnar asking on March 18 whether any written rule prohibited media from visiting the commissioners' hallway. Doc. 16-2 at 7-8. Executive Director Jamey Petersen responded the following day with a policy explanation. *Id.* at 7. The thread continued on March 20, when PSC employee Neil Templeton questioned the privacy rationale for the policy by pointing out that PSC employees work for the State of Montana — a public entity. *Id.* at 6. It was in direct response to Templeton's question that Commissioner Fielder authored her 10:40 a.m. email, portions of which Defendants now claim are too private to disclose. *Id.* at 5-6.

5

The PSC's asserted privacy privilege cannot override Commissioner Molnar's need for this evidence in federal civil rights litigation, nor can it justify withholding communications that go to the heart of whether the disciplinary proceeding against him was predetermined and retaliatory.

II.   The Termination of PSC Human Resources Director Tina Limesand for Refusing to Mischaracterize Allegations Against Commissioner Molnar as "Sexual Harassment"

Defendants directed the PSC's Human Resources Director, Tina Limesand, to officially characterize allegations made against Commissioner Molnar as constituting "sexual harassment." Doc. 16(2d Molnar Decl.) ¶ 11. Ms. Limesand refused, having determined that the allegations did not meet that legal standard. *Id.* Her refusal was one of the stated grounds for her termination, which occurred on or about May 4, 2026. *Id.* That same evening, Ms. Limesand texted Commissioner Molnar: "Received my investigation report. They should be ashamed. Same with my termination[,] it is so retaliatory." *Id.* ¶ 10. Ms. Limesand's termination — resulting from her refusal to provide the characterization Defendants needed to justify their planned disciplinary action — is direct evidence of Defendants' bad faith and retaliatory motive. Her deposition testimony is critical to Commissioner Molnar's preliminary injunction motion.

6

**ARGUMENT**

Rule 26(d)(1) of the Federal Rules of Civil Procedure prohibits parties from seeking discovery prior to a Rule 26(f) conference except when authorized by rule, stipulation, or court order. An order granting expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction...." Fed. R. Civ. P. 26, advisory committee notes, 1993 amend.

This Court has "broad discretion to manage discovery and to control the course of litigation." *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011). Courts in the Ninth Circuit allow expedited discovery prior to a Rule 26(f) conference upon finding good cause. *See Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F.Supp.2d 1086, 1099 (N.D. Cal. 2012); see also Fed. R. Civ. P. 26(d)(1), 33(b)(2), and 34(b). Good cause exists where the moving party shows that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Rovio*, 907 F.Supp.2d at 1099. Courts generally consider five factors to determine whether good cause exists: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (internal quotation marks omitted)

7

(quoting *Disability Rts. Council of Greater Washington v. Washington Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006)). Each of these factors supports granting Commissioner Molnar's motion.

## I.    A Preliminary Injunction Is Pending

Commissioner Molnar has filed a Motion for Preliminary Injunction in this action. Doc. 11. The first and most important factor is thus satisfied. Courts regularly find this factor alone to be powerful evidence of good cause. *See Am. LegalNet*, 673 F. Supp. 2d at 1067 ("[e]xpedited discovery is generally appropriate in cases … where a party is attempting to prepare for a preliminary injunction hearing").

## II.    The Discovery Requests Are Narrow and Precisely Tailored to the Preliminary Injunction

Commissioner Molnar is not seeking broad or open-ended pre-litigation discovery. He seeks two targeted items: (1) a single email already identified in Defendants' own privilege log; and (2) a single deposition of a person whose termination is itself recent, specific, and directly relevant to his claims. His motion therefore satisfies this second factor.

8

**III.** **<u>The Purpose of the Discovery Is Directly to Support the Preliminary Injunction Motion</u>**

The two discovery requests are squarely aimed at the central question in Commissioner Molnar's preliminary injunction motion: whether Defendants' ongoing violations of his First Amendment right to in-person attendance at his agency's hearing, are the result of retaliatory and predetermined bad faith. Commissioner Fielder's email, written weeks before any formal charges were leveled, reflects that she and Commissioner Welborn had already concluded that Commissioner Molnar's disciplinary hearing was a foregone conclusion. If Commissioner Fielder prejudged the outcome of the disciplinary proceeding before it began — and then coordinated with Commissioner Welborn to suppress that admission — that is dispositive evidence of the constitutional deprivation at the heart of this case.

Ms. Limesand's deposition testimony is equally critical. She was the PSC's own Human Resources Director. Her professional determination that the allegations against Commissioner Molnar did not constitute sexual harassment goes directly to whether the charges against him rest on a fabricated foundation. This evidence bears on Commissioner Molnar's likelihood of success on the merits, the irreparable nature of the harm he faces, and the balance of equities.

D.      The Burden on Defendants Is Minimal

Defendants already know exactly where Commissioner Fielder's March 20 email is — they have already catalogued it on a privilege log and produced a redacted copy of the email chain in which it appears. Producing the unredacted version requires virtually no effort on their part. Commissioner Welborn's initiation of the message recall is a matter of confirmed documentary record; the only question is whether the complete, unredacted content will be disclosed. The burden on Defendants of producing a single email is trivial.

Likewise, the deposition of Ms. Limesand similarly imposes minimal burden. She is no longer a PSC employee, so the deposition can be scheduled without disrupting ongoing PSC operations. It is limited to a single witness on a discrete subject matter, and can be completed expeditiously.

E.      The Discovery Request Is Timely and the Risk of Evidence Loss
        Warrants Immediate Action

The circumstances of this case compel immediate action. Defendants have already demonstrated their willingness to destroy evidence. Commissioner Welborn's initiation of the Outlook message recall is documented evidence of an attempt to scrub the email from PSC staff inboxes. PSC's chief legal counsel admits as much, though she describes it as "recalling" the email.

10

The longer Defendants can delay producing the requested discovery, the greater the risk that remaining copies of the email — in backup servers, archived accounts, or the personal devices of the participants — will be compromised or destroyed. The federal courts have authority to act now to prevent that outcome.

## CONCLUSION

For the foregoing reasons, Commissioner Molnar respectfully requests that this Court enter an order granting expedited discovery and specifically:

(1) requiring Defendants to produce all emails, in unredacted form, exchanged between or among Defendants on March 20, 2026, that reference or concern Commissioner Molnar in any respect; and

(2) permitting Commissioner Molnar to take the deposition of Tina Limesand.

DATED: May 28, 2026              Respectfully submitted,

                                 /s/ Matthew G. Monforton
                                 Matthew G. Monforton
                                 Attorney for Plaintiff