Matthew G. Monforton (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone: (406) 570-2949
E-mail: matthewmonforton@yahoo.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BRAD MOLNAR, | Case No. CV 26-41-H-DWM |
| Plaintiff, | |
| vs. | **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO UNSEAL DOCUMENTS, FOR LEAVE TO FILE THE LIMESAND DOCUMENTS, AND FOR EXPEDITED RELIEF** |
| JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission; | |
| Defendants. | |

## INTRODUCTION

Plaintiff Brad Molnar filed two heavily redacted investigation reports (the "CMS Reports") under seal with this Court in conjunction with his preliminary injunction motion. He did so because Defendants insisted that the CMS Reports, even in redacted form, should not be disclosed to the public on employee privacy

1

grounds, and represented that they would promptly move this Court for a protective order.

Nearly two weeks have passed. One week remains until the preliminary injunction hearing on June 18. Defendants have filed nothing.

Plaintiff Molnar now faces a concrete prejudice. The CMS Reports are sealed at Defendants' insistence, but they substantially strengthen the showing of First Amendment retaliation he has already made. He anticipates a need to cite them in replying to Defendants' response to his preliminary injunction motion, which is due on June 15 — three days before the hearing. The CMS Reports are replete with evidence that the "misconduct" for which Defendants are punishing Molnar consisted overwhelmingly of protected speech. They also contain numerous statements from the PSC's own Human Resources Director concluding that the allegations against Molnar did not constitute harassment under applicable standards.

Defendants omitted every one of those statements from the Response Team Report they publicly issued on May 1, 2026. Doc. 12-22. Three days later, they omitted the HR Director herself — terminating her employment because she had assessed complaints against Commissioner Molnar as not meeting the legal threshold for actionable misconduct. Two days after that, Defendants relied on the

sanitized Response Team Report — the one stripped of their own HR Director's contrary conclusions — to lock Commissioner Molnar out of the PSC building.

The sealed CMS Reports that underlie the publicly issued Response Team Report make the pretextual nature of Defendants' actions even clearer. They document allegations arising directly from Molnar's protected public statements made to the press and during PSC hearings, including his criticism of deference to NorthWestern Energy shown by colleagues and staff. They preserve the HR Director's refusal to compromise her professional judgment rather than placate Defendants. And they expose the depths of Defendants' animus toward Molnar far more vividly than they do any legitimate workplace concern.

The nation's "strong presumption in favor of access to court records," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1096 (9th Cir. 2016), entitles Commissioner Molnar — and the public — to see what Defendants' public summary left out. The CMS Reports reveal significant information omitted from the publicly released Response Team Report. The public has a direct and immediate stake in understanding how an elected utility regulator came to be expelled from his own workplace, and whether that expulsion was grounded in genuine misconduct or in the exercise of constitutional rights.

Defendants had two weeks to make their case for continued sealing. They chose silence. This Court should unseal the CMS Reports, grant Commissioner

Molnar leave to file the Limesand Documents described below, and — because Plaintiff's reply must be filed after June 15 but before June 18 — resolve this motion on an expedited basis.

## FACTUAL BACKGROUND

During the "misconduct" hearing on May 6, 2026, Defendants adopted in full the Response Team Report (Doc. 12-22) and relied on it as justification for locking Commissioner Molnar out of the PSC building. Doc. 12-24 at 32-33. As explained in the Response Team Report, "[d]etailed accounts of several allegations and the related investigation are captured in two reports conducted by an Independent Investigator." Doc. 12-22 at 2.[1] That investigator was Communication and Management Services, LLC, and the two reports it generated are referenced as the "CMS Reports."

Defendants redacted the names of nearly all of the persons described in the CMS Reports. Nevertheless, Commissioner Molnar has identified a number of statements as being those of Tina Limesand, who served as the PSC's HR Director from 2021 until May 4, 2026. Many of those statements involve her explanations as to why allegations made against Molnar did not constitute misconduct. None of those statements were included in the Response Team Report. Defendants placed Ms. Limesand on administrative leave in April 2026 and notified her of her

---

[1] All exhibit page numbers cited in this brief are those assigned by the Court's ECF system.

termination on May 4, 2026. One of Defendants' stated reasons was Ms. Limesand's refusal to characterize Commissioner Molnar's actions as harassment. Doc. 16 ¶¶10-11.

By virtue of his position as a member of the Commission, Commissioner Molnar obtained copies of Defendants' written statements to Ms. Limesand concerning her administrative leave and termination, together with Ms. Limesand's refutations of Defendants' stated grounds (the "Limesand Documents"). Because the Limesand Documents are personnel records, Commissioner Molnar seeks leave of this Court before filing them.

Defendants refused to provide copies of the CMS Reports to Molnar or undersigned counsel until May 26. Exhibit 1; *see also* Doc. 12, ¶¶56-57. On May 27, Commissioner Molnar notified Defendants' counsel that he did not consider the CMS Reports appropriate for sealing and intended to file them in this Court. Exhibit 2. Defendants disagreed and represented that they would file a motion for protective order within a reasonable time. *Id.* Because L.R. 5.2(b)(1) permits filing under seal without prior leave of court when "a protective order is sought under Fed. R. Civ. P. 26(c) and L.R. 26.4," and in reliance on Defendants' representation that such a motion was forthcoming, Commissioner Molnar filed the CMS Reports under seal with this Court on May 28. He did so solely to preserve whatever

5

confidentiality interest Defendants believed existed pending resolution of their promised motion.

## ARGUMENT

Courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id.* This District's rules embody the same presumption: every document in the record is "available to public access" absent an order "stating the reasons for sealing," L.R. 1.3(a)(2), and every person who files under seal must certify, "with due regard to the public's right of access," that sealing is appropriate, L.R. 5.2(a).

When sealed filings are "more than tangentially related to the merits of a case," the proponent of secrecy bears the burden of providing "compelling reasons" to justify departing from the presumption of access. *Ctr. for Auto Safety*, 809 F.3d at 1101-03 (applying the compelling-reasons standard to documents attached to preliminary injunction motions); *Kamakana*, 447 F.3d at 1178. The CMS Reports easily satisfy that test: they are the evidentiary foundation of the very retaliation Commissioner Molnar asks this Court to enjoin.

6

The compelling-reasons standard imposes a heavy burden on proponents of secrecy. "Simply invoking a blanket claim, such as privacy or law enforcement, will not, without more, suffice to exempt a document from the public's right of access." *Kamakana*, 447 F.3d at 1185. Moreover, "the mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* at 1179. Instead, sealing requires courts to find "a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Particularly compelling reasons for maintaining the seal are required in this case because the presumption of access is "especially strong in a case like this where the evidence shows the actions of public officials…." *In re Application of NBC, Inc.*, 635 F.2d 945, 952 (2d Cir. 1980).

## I.    DEFENDANTS HAVE FORFEITED WHATEVER CLAIM TO SECRECY THEY ONCE ASSERTED

The CMS Reports sit under seal for one reason: Defendants demanded it. When Commissioner Molnar advised Defendants' counsel that he saw no good-faith basis under L.R. 5.2(a) for sealing the already-redacted reports, Defendants' counsel responded: "Yes, we will file a motion for protective order within a reasonable time. Please file under seal." Exhibit 2. Commissioner Molnar complied. He filed the reports under seal for one purpose only — to preserve

whatever confidentiality interest Defendants believed existed pending resolution of their promised motion.

That motion does not exist. Nearly two weeks have elapsed since Defendants' representation. The preliminary injunction hearing — the very proceeding to which the sealed reports pertain — is a week away. Whatever "a reasonable time" may mean in the abstract, it does not mean never, and it certainly does not mean after the hearing at which the sealed documents matter most.

Nor is the seal self-sustaining. The only authority permitting these documents to remain under seal without a motion for leave is L.R. 5.2(b)(1), which applies when "a protective order is sought under Fed. R. Civ. P. 26(c) and L.R. 26.4." No protective order has been sought. The procedural predicate for the seal has evaporated.

The consequence of Defendants' silence is dictated by the case law. The compelling-reasons standard places the burden squarely on the party seeking secrecy, *Kamakana*, 447 F.3d at 1178, and forbids this Court from maintaining a seal based on "hypothesis or conjecture," *id.* at 1179. With no motion, no brief, no declaration, and no evidence before it, hypothesis and conjecture are all this Court would have to work with. Defendants were given every opportunity to carry their burden. They have not lifted it. They have not even approached it. On that ground alone, the seal should be dissolved.

**II.    DEFENDANTS CANNOT SATISFY THE COMPELLING-REASONS STANDARD IN ANY EVENT**

   **A.    Defendants Have Offered Only the Blanket Privacy Claims That Kamakana Forbids**

The entirety of Defendants' case for secrecy is contained in a single email from their counsel: the individuals who participated in the investigation "have a reasonable expectation of privacy"; the "PSC's procedural rules and Montana law require protection of the employees' privacy rights"; and the PSC "is obligated to protect its employees and officials from future harassment and retaliation." Exhibit 2. That is not an argument. It is a recitation of categories.

"Simply invoking a blanket claim, such as privacy," is precisely what the Ninth Circuit has held "will not, without more, suffice." *Kamakana*, 447 F.3d at 1185. Defendants have never identified a single page, paragraph, or sentence of the CMS Reports whose disclosure would harm any identifiable person. They have never explained how documents from which they themselves have already stripped every complainant's and witness's name could invade anyone's privacy. And they have never articulated how public filing of redacted reports in a federal courthouse exposes any employee to "future harassment" — much less harassment by Commissioner Molnar, who has possessed the reports since May 26 and whose only use of them has been to file them, under seal, with this Court.

9

**B.    Defendants' Own Redactions Already Protect Any Cognizable Privacy Interest**

Defendants redacted these reports themselves. The names of complainants, witnesses, and alleged victims have been excised — every one of them, with the sole exception of Defendant Bukacek, who has waived any privacy interest in this matter. Exhibit 2. Sealing a document whose identifying information has already been removed protects no employee from anything.

That Commissioner Molnar was able to recognize certain statements as Ms. Limesand's does not suggest otherwise. Her statements are identifiable for one reason only: she occupied a unique institutional role as the lone official charged with applying harassment and retaliation standards to the allegations, and her professional conclusions bear that unmistakable signature.

The only "privacy" the seal still serves is Defendants' own: their interest in shielding from public view an investigative record that condemns press conferences as misconduct, treats answering a reporter's question as "retaliation," and contains their own HR Director's refusal to endorse their legal conclusions. But avoiding "embarrassment, incrimination, or exposure to further litigation" is not a compelling reason. *Kamakana*, 447 F.3d at 1179. And even if some discrete passage of the 112 pages genuinely warranted protection, the remedy would be a targeted additional redaction of that passage — not the wholesale sealing of two

10

entire reports. Redaction is the scalpel the law prefers; Defendants demand a shroud.

**C.    The Complainants Were Expressly Warned That Confidentiality Could Not Be Maintained**

The complaint forms signed by the complainants expressly advised them that "complete confidentiality cannot be maintained in the process of handling informal and formal complaints." Exhibit 2. A person who is told at the outset that confidentiality cannot be promised does not thereafter acquire a "reasonable expectation" of it.

Defendants' own conduct confirms the point. They transmitted the redacted CMS Reports to the Governor's office in support of their demand that Commissioner Molnar be suspended. Exhibit 1. They distributed the reports to all five Commissioners. Doc. 12, ¶56. And they publicly issued a Response Team Report that summarizes, characterizes, and adopts the CMS Reports' findings. Doc. 12-22 at 2. Defendants have treated the contents of these reports as disclosable whenever disclosure advanced their campaign against Commissioner Molnar — and as sacrosanct only now, when the underlying documents would expose what their public summary left out. Confidentiality that is discarded when convenient and invoked when inconvenient is not a compelling reason. It is a litigation tactic.

11

**D.      Article II, Section 10 of the Montana Constitution Cannot Seal the Records of a Federal Court**

The only legal authority Defendants have ever cited — Article II, Section 10 of the Montana Constitution — cannot bear the weight placed upon it. Exhibit 1. That provision is a shield protecting Montana citizens against intrusions by their government. It is not a sword by which state officials may conceal records of their own official conduct from the public. Nothing in its text or history suggests it constrains anyone other than the State.

More fundamentally, access to the records of a United States District Court adjudicating a federal civil rights claim is governed by the federal common-law right of access and the Ninth Circuit's compelling-reasons standard, *Kamakana*, 447 F.3d at 1178-79, not by state constitutional provisions, state statutes, or the PSC's internal "procedural rules." A state agency cannot exempt its records from federal judicial scrutiny by labeling them confidential under state law, any more than it could exempt its conduct from federal constitutional scrutiny by labeling it lawful under state policy.

**III.    THE PRESUMPTION OF ACCESS IS AT ITS APEX — AND DEFENDANTS' OWN USE OF THE REPORTS HAS MADE IT STRONGER**

The presumption of access exists so that citizens may "keep a watchful eye on the workings of public agencies." *Kamakana*, 447 F.3d at 1178. Few records

could matter more to that function than these. The CMS Reports are the evidentiary foundation upon which three elected officials expelled a fourth elected official from the seat of his agency — on the eve of hearings on the largest utility merger in Montana history — and upon which they now ask the Governor to suspend him for a year and seat a replacement. Doc. 12-26 at 4. The 250,000 Montanans of District 2, and every ratepayer whose energy costs turn on the pending merger, are entitled to examine the actual evidence behind that extraordinary act. *In re Application of NBC*, 635 F.2d at 952.

Defendants' own conduct strengthens the presumption further. Defendants wielded the CMS Reports as a sword: they transmitted them to the Governor in support of a suspension demand. Having done all that, they cannot now sheathe the same reports in secrecy because the reports have become inconvenient. A party may not use a document to punish its adversary in public and then invoke "privacy" to prevent the public from reading it.

And the reports are inconvenient indeed. Defendants' publicly issued Response Team Report announced a verdict while omitting every statement in which the PSC's own HR Director concluded that allegations against Commissioner Molnar did not constitute harassment or retaliation under applicable law. Defendants then terminated the HR Director — in part for refusing to say otherwise. Doc. 16 ¶¶10-11. The sealed CMS Reports contain what the public

summary buried. The public has an interest in seeing not merely the verdict Defendants announced, but the evidence they suppressed. The public interest in access is particularly acute because these reports are not peripheral discovery materials; they are evidence the Court may rely upon in deciding whether elected officials violated the First Amendment.

## IV.    THE COURT SHOULD GRANT COMMISSIONER MOLNAR LEAVE TO FILE THE LIMESAND DOCUMENTS

For the same reasons, the Court should grant Commissioner Molnar leave to file the Limesand Documents — Defendants' written statements to Ms. Limesand concerning her administrative leave and termination, and her refutations of Defendants' stated grounds.

Commissioner Molnar proceeds by motion rather than by unilateral filing for a simple reason: he obtained these records by virtue of his position as a member of the PSC, and they are personnel records. Unlike Defendants, who have invoked confidentiality only when convenient, Commissioner Molnar declines to make himself the arbiter of what may be placed in the public record. He instead asks this Court to decide, applying the federal standards that govern access to its own records.

Those standards favor disclosure. The Limesand Documents bear directly on the pretext inquiry at the heart of the June 18 hearing: they show that the one PSC

14

official charged with applying harassment and retaliation law to the facts refused to reach the conclusions Defendants demanded — and was removed for it. Doc. 16 ¶¶10-11. Once filed in support of the preliminary injunction motion, they will be judicial records subject to the same compelling-reasons standard as the CMS Reports. *Kamakana*, 447 F.3d at 1178-79. And the privacy interests the documents most directly implicate are Ms. Limesand's own; nothing in them exposes her to harm. They record a public official's adherence to her professional judgment under pressure to abandon it.

And she faces no threat of retaliation. After Defendants terminated Ms. Limesand, she was immediately hired by State Auditor James Brown, who served as PSC President from 2021 to 2024 and knows well Ms. Limesand's qualities as an employee.

Should the Court conclude that any discrete passage warrants protection, Commissioner Molnar is prepared to file the Limesand Documents with targeted redactions or, in the alternative, to lodge them under seal in the first instance for in camera review so the Court may determine the appropriate scope of public filing. What he asks now is leave to place before the Court, in advance of the June 18 hearing, the documents that most directly corroborate the pretext at the center of this case.

## V.  THE COURT SHOULD EXPEDITE RESOLUTION OF THIS MOTION

Defendants' response to Plaintiff Molnar's preliminary injunction motion is due June 15. The hearing is June 18. Under the default briefing schedule, Defendants' response to this motion would not be due until after both dates and the relief this motion seeks would arrive too late to matter. Plaintiff Molnar therefore respectfully requests that the Court shorten Defendants' time to respond and resolve this motion no later than June 15, 2026. *Cf.* L.R. 5.2(g)(1) (court may rule on sealing matters "without awaiting a response").

Expedition works no unfairness on Defendants. They have possessed the CMS Reports at all times. They have known of Commissioner Molnar's objection to sealing since May 27. And they have had two weeks to file the protective-order motion they promised but never produced. Whatever urgency now exists is entirely of Defendants' own making.

## CONCLUSION

Public officials and government entities "cannot assert a valid compelling interest in sealing [judicial records] to cover up any wrongdoing on their part or to shield themselves from embarrassment." *Mendez v. City of Gardena*, 222 F. Supp. 3d 782, 792 (C.D. Cal. 2015). That is exactly what Defendants are attempting in this case. The Court should reject those efforts, unseal the CMS Reports, grant

16

Commissioner Molnar leave to file the Limesand Documents, and rule no later than June 15, 2026.

DATED: June 10, 2026

<div style="margin-left:40%">

Respectfully submitted,

MONFORTON LAW OFFICES

/s/ Matthew G. Monforton
Matthew G. Monforton
Attorney for Plaintiff

</div>

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document, excluding caption, tables, and certificate of compliance, contains 3,475 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word.

DATED: June 10, 2026

Respectfully submitted,

MONFORTON LAW OFFICES

/s/ Matthew G. Monforton
Matthew G. Monforton
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 10th day of June, 2026, that a copy of the foregoing will be delivered this day via the Court's ECF system to Defendants.

DATED: June 10, 2026

Respectfully submitted,

MONFORTON LAW OFFICES, PLLC

/s/ Matthew G. Monforton
Matthew G. Monforton
Attorney for Plaintiff

19