Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
P.O. Box 9199
Missoula, MT 59807-9199
Telephone:  (406) 543-6646
npjones@boonekarlberg.com
tleonard@boonekarlberg.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BRAD MOLNAR,<br><br>                    Plaintiff,<br><br>        vs.<br><br>JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission;<br><br>                    Defendants. | Cause No. CV-26-41-H-DWM<br><br>**DEFENDANTS' COMBINED BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL AND BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

## INTRODUCTION

Plaintiff Brad Molnar ("Molnar") demands the identification and full public disclosure of all individuals who provided information in an internal workplace investigation into his misconduct at the Public Service Commission ("PSC"). Those individuals participated in the investigation with the reasonable expectation

that they could do so confidentially.  This was a critical factor in securing their participation, given Molnar's well-known proclivity for engaging in vindictive retribution, and provides a compelling reason for the names to remain redacted and under seal.  The individuals' privacy interests clearly outweigh the merits of public disclosure, particularly since their names are not probative of any claim or defense in this case, and because Molnar only wants the names for an improper purpose—to publicly attack the individuals in the media.  This Court should restrict the production of the investigative reports at issue to copies with redacted names, and further require that those reports remain under seal.

There are also compelling reasons to decline Molnar's demand for the public disclosure of a third-party employee's personnel records.  To Defendants' knowledge, the employee, Tina Limesand ("Limesand"), has not waived her legitimate privacy interest in her own personnel records.  Those records relate to a confidential human resources matter that, despite Molnar's speculation, has nothing to do with this case and are not necessary to the disposition of his Motion for Preliminary Injunction.   In the event the Court is inclined to consider this information at all, it should: (1) order the personnel records be filed under seal to protect the employee's privacy rights, and (2) allow the PSC an opportunity to supplement the record if the personnel records submitted by Molnar are incomplete.

Molnar's Motion to Unseal should be denied, and Defendants' Motion for Protective Order should be granted.

## BACKGROUND

Molnar alleges his fellow PSC commissioners retaliated against him for engaging in speech protected by the First Amendment when they voted to adopt the "Report In the Matter of the Misconduct of Commissioner Brad Molnar," dated May 2, 2026 ("Response Team's Report"), and to pursue the implementation of the Report's recommendations, including a remote work requirement for Molnar. Because he is an elected official, the argument goes, he is impervious to personnel action for policy violations.[1]

The Response Team's Report was based upon two underlying reports—the "Investigative Report" and "Retaliation Report" (collectively, "Underlying Investigation")—drafted by an independent investigator, Communication and Management Services, LLC ("CMS"). Those reports detailed accounts of numerous allegations of misconduct made against Molnar by PSC department personnel. (Investigation Report and Retaliation Report (filed under seal at Doc. 18, Exs. 1-2, respectively).)

---

[1] The factual background and associated evidence is more thoroughly set forth in Defendants' Response to Plaintiff's Motion for Preliminary Injunction, filed contemporaneously herewith and incorporated herein by reference.

3

On May 1, 2026—prior to the May 6, 2026 hearing at which Defendants adopted the Response Team's Report—the Response Team provided Molnar with copies of both reports in the Underlying Investigation, with the names of PSC personnel who had cooperated in the investigation redacted.  (Doc. 18, Exs. 1-2.) It is these names Molnar now demands Defendants identify, and that they do so without any protection from public disclosure.

When Molnar filed this lawsuit, he moved the Court for an emergency temporary restraining order to permit him to participate in person in a hearing at the PSC building starting on May 12, 2026.  (Doc. 3.)  The Court granted the motion, and Molnar was permitted to enter the PSC building to attend the hearing. (Doc. 9.)

Following that hearing, Molnar moved for a preliminary injunction for full physical access to the PSC building for the duration of this litigation, and also moved for expedited discovery.  (Doc. 14.)  Concurrently, Molnar's counsel communicated a demand for copies of the Underlying Investigation with the names of cooperating PSC personnel unredacted.

Defendants declined to produce unredacted copies, as the names are irrelevant to Molnar's First Amendment retaliation claim and the privacy interests of the PSC employees clearly outweigh the merits of public disclosure.  The parties' counsel met and conferred regarding the discovery of the names within the

Underlying Investigation, but reached an impasse.  On May 27, 2026, the undersigned informed Molnar's counsel that Defendant's intended to file a motion for protective order.  On June 10, 2026 Molnar filed his Motion to Unseal Documents.

**LEGAL STANDARD**

Federal courts have historically recognized a general right to inspect and copy public records and documents.  *Kamakana v. Cty. and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  "However, 'access to judicial records is not absolute.'"  *U.S. v. Luciano*, No. MJ 25-12-M-DLC, 2025 WL822715 *1 (D. Mont. Mar. 14, 2025) (quoting *Kamakana*, 447 F.3d at 1178).  A party seeking to seal records may overcome the presumption of public access to judicial records by showing that there is a "compelling reason" to do so.  *U.S. v. Eslami*, No. CR 24-47-M-DWM 2024 WL 4518944 *1 (D. Mont. Oct. 17, 2024) (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016)).

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for <u>improper purposes</u>,' such as the use of records to <u>gratify private spite, promote public scandal, circulate libelous statements</u>, or release trade secrets."  *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*,

435 U.S. 589, 597 (1978) (emphasis added).  As set forth below, compelling reasons exist for the Underlying Investigation to remain under seal in this case.

Upon the motion of a party or other person from whom discovery is sought, the court may "for good cause," issue an order to protect the party or person "from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Good cause exists where the party seeking protection shows prejudice or harm will result if no protective order is granted.  *See Phillips v. GMC,* 307 F.3d 1206, 1211-12 (9th Cir. 2002); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130-31 (9th Cir. 2003).  "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary."  *Phillips*, 307 F.3d at 1211.  Courts have broad discretion to decide when a protective order is appropriate and what degree of protection is required.  *Id.* at 1211-12 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  The order may forbid the discovery entirely, specify terms for the discovery (including the time and place or the allocation of expenses), prescribe a discovery method other than the one selected by the party seeking discovery, forbid discovery on certain matters, or limit the scope of discovery to certain matters.  Fed. R. Civ. P. 26(c)(1)(A)-(D).  As set forth below, good cause supports the entry of a protective order in this case.

6

## ANALYSIS

**I.      THERE ARE COMPELLING REASONS TO PROTECT THE PRIVACY OF THIRD PARTY WITNESSES WHO PARTICIPATED IN THE INVESTIGATION, AND WHO REASONABLY FEAR RETALIATION.**

Releasing the names of those who provided information in the workplace investigation will result in harm which outweighs the interest in public disclosure. Unsealing the Underlying Investigation—even with the names redacted—will serve no purpose but to gratify Molnar's private spite, promote public scandal, and further discourage PSC employees from speaking out about workplace discrimination and harassment. *Kamakana*, 447 F.3d at 1179.

As an initial matter, Defendants have not "forfeited" any right to request the Underlying Investigation remain under seal, or to move for a protective order. Molnar's rendition of counsel's communications is selective. After requesting that Molnar's counsel file the Underlying Investigation under seal, and clearly communicating that Defendants intended to move for a protective order, the undersigned duly prepared that motion. In the late afternoon on June 10, 2026—as the undersigned was finalizing Defendant's motion to file the next day—Molnar filed a motion to unseal the Underlying Investigation. He did so having been informed that Defendants' motion for protective order would be filed the next day. (6/10/26 Email Correspondence, **Exhibit A**.) Defendants then held off on filing the motion for protective order to review Molnar's filing, and to revise their brief

so as to submit a combined response to the motion to unseal and brief supporting a protective order.

As demonstrated below, Defendants do not invoke a "blanket claim" of privacy, as Molnar alleges.  (Doc. 26, p. 9).  Instead, vital third-party privacy interests, and Molnar's well-established propensity for retaliation, provide ample compelling reasons, as well as good cause, for the Underlying Investigation to remain sealed.

The Ninth Circuit recognizes that state employees possess constitutionally protected interests in informational privacy.  *Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019).  Similarly, under Montana law, third-party state employees who cooperate in internal workplace investigations have subjective and reasonable expectations of privacy which can clearly outweigh the merits of public disclosure, given the public interest in encouraging public employees to report misconduct. *Moe v. Butte-Silver Bow Cnty.*, 371 P.3d 415, 420-422 (Mont. 2016).  Molnar's argument that Montana state law cannot be considered by this Court is contrary to Ninth Circuit authority and federal practice in these matters.  *Phillips*, 307 F.3d at 1212 (courts consistently grant protective orders to prevent disclosure of many types of information, including records confidential under state law).

Further, federal courts, including this Court, have held that "[t]he need to keep [] information private so as to protect various individuals' privacy and protect

against the risk of improper use are compelling reasons to file them under seal."

*Eslami*, *1 (court sealed confidential law enforcement information which was not generally accessible to the public); *see also Goodman v. Las Vegas. Metro. Police Dep.*, No. 2:11–cv–01447–MMD–VCF, 2013 WL 5743638 *3 (D. Nev. Oct. 16, 2013) (name of third-party individual sealed because public could use the information for improper purposes such as scandal, libel or harassment); *U.S. v. Eklund*, No. 3:18-cr-00035-SLG, 2021 WL 1269115 *1 (D. Alaska Apr. 6, 2021) (partially redacted report containing information on multiple third parties sealed because it appeared party sought to unseal them for improper purposes).

Here, multiple state employees made allegations and statements adverse to Molnar in a workplace investigation. Releasing their names—unique identifiers in an investigation which would not generally be disclosed to the public—raises serious privacy concerns. *Tschida*, 924 F.3d at1304. Molnar's contention that these state employees did not have a "reasonable expectation of privacy" (Doc. 26, p. 11) in cooperating with the investigation is made without any supporting evidence or authority. By contrast, the PSC's Internal Policy Manual ("IPM"), which governs internal workplace investigations such as an Underlying Investigation, clearly states that information from such an investigation will be treated as confidential:

> 2.18.4. Disciplinary action records resulting from an investigation are confidential personnel records. Other documented information related

to an investigation, while not a part of a personnel record, will be treated as confidential to protect the privacy of the individuals involved. If a request for the information is made, the Response Team shall review the information and balance the merits of public disclosure against an individual's right to privacy to determine whether the information or portions of the information may be released.

Mont. Dep't of Public Serv. Regul., Internal Policy Manual, Section 3: Code of Conduct Policy, § 2.18.4 (2024) (emphasis added).

The IPM also mandates that investigations comply with Administrative Rules of Montana (ARM) § 2.21.4022, which states "Agency managers shall make every attempt to protect the privacy of individuals involved in the complaint process." *See* IPM, Code of Conduct, § 2.12.1 (emphasis added).

Moreover, the PSC's general counsel has contacted all twelve PSC personnel whose names remain redacted in the Investigative Report and all eleven PSC personnel (and a third-party witness) whose names remain redacted in the Retaliation Report, to inquire if they were willing to waive their privacy rights. (First Declaration of Amanda Webster, attached as **Exhibit B**, p. 2.) All the individuals, except Commissioners Welborn and Pinocci, former employee Alana Lake (who waives confidentiality to the extent discussed in her contemporaneously filed declaration), and Commissioner Annie Bukacek (who previously voluntarily waived confidentiality in limited part), declined to waive their privacy rights. (*Id.*)

Releasing the names would not encourage "candor and willingness of [PSC] employees to bring legitimate complaints" nor would it promote "candid

10

communication between" the PSC and its employees. *Moe*, 371 P.3d at 422. It would do precisely the opposite. It would allow actors like Molnar to bully and intimidate other personnel to remain silent.

The risk is not hypothetical. Molnar is fond of bragging to PSC personnel that he once nearly beat a man near to death, assaulted a man in a public parking lot for having crossed him, and has a background as a mixed martial artist. (Bukacek Declaration, ¶ 10; Lake Declaration, ¶ 29.)[2] He also has had at least one violent outburst at work, which involved throwing his cup against a wall without warning during a management meeting. (Lake Declaration ¶ 50.) Multiple employees have expressed discomfort with Molnar's presence at the PSC and have requested to be moved away from his office.

Further, Molnar's propensity for retaliation against those he feels have wronged him is well known at the PSC. Molnar previously stated to that he intended to "take out" whoever had made complaints against and would use his "personal resources and attorneys" to "silence" them. (Lake Declaration, ¶¶ 22-23.) The day after Defendant Bukacek voted for Defendant Welborn to replace Molnar as PSC President, Molnar filed an ethics complaint against Defendant Bukacek with the Commission of Political Practices ("COPP"). (Bukacek

---

[2] Unless otherwise noted, the referenced declarations are attached to Defendants' Response to Motion for Preliminary Injunction, filed concurrently herewith.

11

Declaration, ¶ 20.)  That complaint was later because it was "speculative and unsupported by evidence."  (*Id.*)  Molnar has also previously publicly disparaged, on multiple occasions, PSC employees who cooperated with the investigation. (Lake Declaration, ¶¶ 38-42.)  Under these circumstances and with this background, its little wonder the remaining individuals whose names remain redacted were not willing to waive their privacy rights.

The privacy interests at stake in this matter clearly outweigh the merits of public disclosure, if any.  Sharing the employees' names, of course, would not "provide the public with any greater opportunity to participate in the internal employment decisions of the [PSC]."  *See Moe,* 371 P.3d at 421.  "The public, via news reporting outlets, already ha[s] received information regarding" Molnar's investigation, removal as PSC president, and this lawsuit.  *Id.*  The names of witnesses who reasonably expected confidentiality would add nothing to foster any enhanced participation from the public.

Unsealing the Underlying Investigation serves no purpose but to further Molnar's efforts to retaliate against the employees who cooperated in the investigation through a public smear campaign.  Molnar is *already* well aware of the identities of the individuals, based on the details of the allegations against him and communications contained in the Investigative Report and Retaliation Report. (Doc. 26, p. 10)  For instance, the Investigation Report contains multiple emails

between Molnar and Personnel 8, Personnel 3, Personnel 7.  (Doc. 18, Ex. 1, pp. 51-55.)  Similarly, the Retaliation Report contains a "Timeline" which outlines multiple communications from Molnar sent to Personnel 4, Personnel 5, Personnel 2, Personnel 9, Personnel 8, and Personnel 12.  (Doc 18, Ex. 2, pp. 25-27.)  That fact is, Molnar is not seeking the unredacted names to be able to defend against the allegations made in the Underlying Investigation; he is seeking the unredacted names in an attempt to publicly pressure or otherwise retaliate against those individuals who cooperated in the investigations.  Thus, even if this Court orders Defendants to produce unredacted reports, those reports should not be publicly disseminated and should remain under seal pursuant to a protective order.  District courts within the Ninth Circuit, including this Court, have found that the protection of individual privacy rights and the protection against the risk of improper use are compelling reasons to file under seal.  *E.g.*, *Eslami*, *1.  Such is the case here.

Apart from the identification of witnesses of whom Molnar is already well aware, there is no other colorable basis to argue the names are relevant in this action.  "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citing F. R. Civ. P. 26(c)); *see also*

13

26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise alleged by these rules or by local rules if it determines that:…(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)").

Courts regularly find irrelevancy constitutes good cause for a protective order. *Navel Orange Admin. Comm. v. Exeter Orange Co., Inc.*, 722 F.2d 449, 454 (9th Cir. 1983) (affirming protective order barring defendant from discovering "irrelevant and immaterial matters"). *See also, e.g., Hayat v. Fairley*, No. WMN-08-3029 2010, WL 11451124 **2-4 (D. Md. May 6, 2010) (plaintiffs' financial records were irrelevant to the plaintiff's Fourth and Fourteenth Amendment claims based on traffic stop); *Gomez v. Hernandez*, No. 5:20-cv-00011-GW (SHK), 2020 WL 6541993 **4-5 (C.D. Cal Oct. 9, 2020) (proposed questions regarding defendant's personal views and financial information irrelevant to plaintiff's negligence claims). The Court should do so here.

Molnar brings a single First Amendment retaliation claim, pursuant to 42 USC § 1983. As Molnar stated in his complaint, the claim requires he demonstrate:

> "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action."

(Doc. 1, ¶ 96 (citing *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022).)  The unredacted names have no bearing on any of these elements.  Fed. R. Evid. 401 (relevant evidence must involve a fact that "is of consequence in determining the action.")  Furthermore, Molnar has *not* brought an action challenging the merits of the workplace investigations into his misconduct, *nor* does he claim his due process rights were violated by the investigations.  The unredacted names which Molnar now seeks are simply not relevant to proving or disproving any fact of consequence in the case.

Delving deeper, under the first element of his claim, Molnar must prove *his own* speech was constitutionally protected.  (Doc. 1, ¶ 97.)  This has nothing to do with the identity of the individuals listed in the reports.  Needless to say, the names would shed no light on whether any of Molnar's statements or actions are protected by the First Amendment.  Likewise, under elements two and three, the names would not assist in determining whether Molnar was subjected to a materially adverse action—the action is already a matter of public record—or whether "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist*, 32 F.4th at 775.

In summary, Molnar seeks the names of those who provided information to investigators for the improper purpose of publicly attacking them.  There is no other colorable justification for insisting on the information.  With this in mind, the

15

Court's balancing of the interests involved becomes particularly straightforward. The individuals who participated in the workplace investigation had a reasonable expectation of privacy.  Preserving and protecting that expectation is essential to ensuring internal workplace investigations into the misconduct of officials can proceed unhindered, and that personnel and other officials can provide information about superiors and colleagues candidly, and without fear of retaliation and retribution.

II.    **THERE ARE COMPELLING REASONS TO PROTECT THE CONFIDENTIAL PERSONNEL RECORDS OF A THIRD PARTY EMPLOYEE FROM PUBLIC DISCLOSURE.**

Molnar seeks to publicly disclose a third party's confidential personnel records, based on a tenuous and speculative theory about a connection to this case.  He provides no evidence that the employee, former PSC Human Resources Director Tina Limesand ("Limesand"), has agreed to waive her privacy rights.  Regardless, the issue is a red herring.  The personnel records have no bearing on the issues before the Court in Molnar's Motion for Preliminary Injunction.

Molnar says he obtained Limesand's records "as a member of the Commission," and acknowledges they are "personnel records."  (Doc. 26 at 5.)  He contends Limesand "told [him] that she determined the allegations [against him] did not rise to the level of sexual harassment," and that this "was one of the reasons

16

the PSC gave her as grounds for her termination." (Doc. 16, ¶ 11.) Molnar argues this tends to show "the charges against him rest on a fabricated foundation." (Doc. 17 at 9.)

Any suggestion that Limesand is no longer employed at the PSC because of her alleged determination that Molnar's behavior did not rise to the level of sexual harassment is unequivocally false. The specific issues surrounding her employment are confidential human resources information, however, which the PSC cannot comment upon unless and until Limesand waives her privacy rights, or this Court determines the merits of public disclosure outweigh those rights. (Ex. B, ¶¶ 12, 13.) *See, e.g., Tschida*, 924 F.3d at 1304; *Moe*, 371 P.3d at 420-422; *Phillips,* 307 F.3d at 1212. As Limesand is no longer employed by the PSC, Defendants are currently unaware of her position in that regard.

In any case, Molnar articulates no rationale for the merits of public disclosure. There is no suggestion, nor could there be, that Limesand was part of the completed investigation against Molnar, or privy to all the investigative materials upon which the PSC acted. Molnar's failure to allege that Limesand's opinion was based on the same information available to the commissioners who imposed the subject sanctions is telling.

Furthermore, there are no grounds to argue Limesand's alleged opinion is determinative of whether sexual harassment did, in fact, occur, or whether the

PSC's sanctions against Molnar were retaliatory.  It may well be that every PSC employee who worked in the PSC's offices at the pertinent time has an opinion about whether Molnar engaged in unlawful retaliation and harassment.  That is largely beside the point.  For purposes of the requested preliminary injunction, the question is not whether select employees thought Molnar was engaging in sexual harassment or other misbehavior, but whether Molnar is likely to establish (1) he engaged in constitutionally protected activity, (2) he was subjected to materially adverse action by the PSC Commissioners, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.  *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024); *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477-479 (2022).  In other words, Limesand's opinions—whatever they may be—will not tip the scales one way or the other on whether Molnar is likely to succeed on the merits.  *See Rovio Entm't Ltd. V. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1100 (N.D. Cal. 2012) (denying motion for expedited discovery where the plaintiff "ha[d] not clearly shown that the information it seeks [in the defendants' depositions] is needed on an expedited basis to obtain a preliminary injunction").

The Limesand documents are unnecessary to resolve the motion for preliminary injunction, and Limesand's privacy interests in her personnel records should be protected unless and until she waives them.  In the event the Court is

18

inclined to consider this issue in connection with Molnar's Motion for Preliminary Injunction, however, it should: (1) order the personnel records be filed under seal to protect Limesand's privacy rights, and (2) allow the PSC an opportunity to supplement the record if the personnel records submitted by Molnar are incomplete.

### CONCLUSION

For the foregoing reasons, the Court should issue a protective order that restricts production of the investigative reports to copies with redacted names, and further requires that those reports remain under seal.

DATED this 15th day of June, 2026.

BOONE KARLBERG P.C.

*/s/ Natasha P. Jones*
Natasha P. Jones
*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 3,998 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED this 15th day of June, 2026.

BOONE KARLBERG P.C.


*/s/ Natasha P. Jones*
Natasha P. Jones
*Attorneys for Defendants*
