Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
P.O. Box 9199
Missoula, MT 59807-9199
Telephone:  (406) 543-6646
npjones@boonekarlberg.com
tleonard@boonekarlberg.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| BRAD MOLNAR,<br><br>             Plaintiff,<br><br>    vs.<br><br>JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission;<br><br>             Defendants. | Cause No. CV-26-41-H-DWM<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

**INTRODUCTION**

Plaintiff Brad Molnar ("Molnar") seeks expedited discovery to (1) secure the production of an unredacted March 20, 2026 email from PSC Vice President Jennifer Fielder ("Fielder"), and (2) take the deposition of a former PSC employee Tina Limesand ("Limesand").  The first issue presented by Molnar's motion (the

unredacted email) is now moot.  An unredacted copy of the email was produced

after the third-party employee referenced in the email agreed to waive his privacy

rights.  (Second Declaration of Amanda Webster, **Exhibit A**, ¶ 11.)  As it relates to

the second issue (requested deposition), the sought-after information is irrelevant

and unnecessary to any issue presented in Molnar's Motion for Preliminary

Injunction.  As such, Molnar has failed to demonstrate the requisite "good cause"

to alter regular discovery procedures.  *Semitool, Inc. v. Tokyo Electron Am., Inc.*,

208 F.R.D. 273, 276 (N.D. Cal. 2002).  Molnar's Motion for Expedited Discovery

should be denied.

## BACKGROUND

Molnar, a member of the Montana Public Service Commission ("PSC"), was

sanctioned by the PSC for numerous policy violations, including harassment and

retaliation.  The relevant factual background is set forth in Defendants' Response

to Plaintiff's Motion for Preliminary Injunction, filed concurrently herewith and

incorporated herein by reference.

Molnar filed this action on May 11, 2026, seeking declaratory and injunctive

relief to overturn the PSC's sanctions against him.  (Doc. 1.)  Soon thereafter, he

filed his Motion for Preliminary Injunction, contending that he is immune from the

sanctions and demanding he be restored to "full access" to the PSC office building.

(Doc. 13.)  At the same time, he filed his Motion for Expedited Discovery, arguing

he needs two items of discovery before the Court rules on his motion.  (Doc. 17.) This Court set a hearing on the Motion for Preliminary Injunction, to commence at 9:00 a.m. on June 18, 2026.  (Doc. 19.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally prohibit a party from seeking discovery from any source before the parties have conferred as required by Rule 26(f).  Fed.R.Civ.P. 26(d).  In the Ninth Circuit, courts use the "good cause" standard to determine whether discovery should be allowed to proceed prior to a Rule 26(f) conference.  *Rovio Entm't Ltd v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1100 (N.D. Cal. 2012).  Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.  *Id.* (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) and *UMG Recordings, Inc. v. Doe*, 2008 U.S. Dist. LEXIS 79087, 2008 WL 4104214, *4 (N.D. Cal. 2008) (listing cases from Ninth and other circuits citing *Semitool* ).

In considering whether good cause exists, factors courts may consider include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Id.* (citing *Am. Legalnet,*

3

*Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 (C.D. Cal. 2009).  The party seeking expedited discovery in advance of the Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures. *Id*. at 1066.  Molnar has not met his burden.

## ANALYSIS

### A.      Unredacted Copy of the March 20, 2026 Email

Although this issue is now moot (Ex. A, ¶ 11), Defendants write to correct Molnar's misstatements about alleged discovery transgressions.

The subject email was part of a relatively recent exchange commenced by Molnar.  Molnar sent an email on March 18, 2026 to PSC personnel, asking if "anyone is aware of a written rule that prohibits media or anyone else from visiting the "commissioner" hallway or the "commissioners/legal dept hallway"?  (Doc. 16-2 at 12.)  PSC Executive Director Jamey Petersen responded with an explanation of PSC's Security Policy, noting restrictions were in place "to protect safety, security, and the privacy of ongoing work."  (*Id*. at 12.)  PSC Rate Analyst Niel Templeton responded with a question, asking, "I don't get the privacy of ongoing work part.  Don't we work for the State of Montana—a public creation?"  (*Id*. at 11.)  Jennifer Fielder then sent the email at issue, addressed *only* to PSC President Welborn and PSC Executive Director Petersen, providing her thoughts "[t]o help him [Templeton] understand the point he raised."  (*Id*. at 10-11.)  In that

4

email, she referenced a specific confidential HR matter as an example of why the work of even State employees may involve topics that are very much private and protected. (*Id*. at 10-11.) President Jeff Welborn ("Welborn") inadvertently forwarded Fielder's email when responding to Templeton. (*Id*. at 9.) Petersen and PSC Chief Regulator Will Rosquist were also copied on the response. (*Id*.) Once the mistake was discovered, Welborn recalled the email. (*Id*. at 10.) It was not deleted or "scrubbed." (*Id*. at 6-8.)

Molnar requested the email, and it was produced on May 5, 2026. (Ex. A, ¶ 3.) A very small portion of the email was redacted to protect the third-party employee's privacy in his confidential employment matter. (*Id*., ¶ 4; Doc. 16-2 at 10-11.) This was appropriately disclosed and explained in a privilege log, and in correspondence from PSC's counsel. (*Id*., ¶ 5; Doc. 16-2 at 6-8.) As counsel explained, the redacted information was forwarded inadvertently; it was never intended to be shared outside of those PSC officers responsible for the particular human resource matter. (*Id*., ¶ 7; Doc. 16-2.) Molnar's counsel did not respond to this correspondence or production, and raised no objections or concerns. (Ex. A, ¶ 10.)

At the end of the day, the unrelated employment matter—including Fielder's reference thereto in an email, and Welborn's inadvertent forwarding of the email— has precisely <u>nothing</u> to do with any issue in this case, and there is <u>zero</u> evidence

any attempt to "scrub" or "delete" information was made. Furthermore, there are no legitimate grounds to attack the limited redactions. The Ninth Circuit recognizes that state employees possess constitutionally protected interests in informational privacy. *Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019). Similarly, under Montana law, third-party state employees have subjective and reasonable expectations of privacy which can clearly outweigh the merits of public disclosure. *Moe v. Butte-Silver Bow Cnty.*, 371 P.3d 415, 420-422 (Mont. 2016); *see also Phillips v. GMC,* 307 F.3d 1206, 1212 (9th Cir. 2002) (courts consistently grant protective orders to prevent disclosure of many types of information, including records confidential under state law). Here, the third-party employee referenced in the email has a reasonable expectation of privacy in a workplace disciplinary matter, and the merits of disclosure are not only outweighed by the employee's privacy interests—they are nonexistent.

Subsequently, the employee agreed to waive his privacy interests concerning the contents of the email. (Ex. A, ¶ 11.) An unredacted copy of the email was provided to Molnar's counsel on June 5, 2026. (*Id*., ¶ 11.)

## B.    Deposition of Tina Limesand

Molnar argues he must depose a former PSC employee to support his motion for preliminary injunction. As understood, Molnar wishes to accomplish this discovery before the June 18, 2026 hearing. Molnar says that employee, former

6

PSC Human Resources Director Tina Limesand ("Limesand"), "told [him] that she determined the allegations [against him] did not rise to the level of sexual harassment," and that this "was one of the reasons the PSC gave her as grounds for her termination." (Doc. 16, ¶ 11.)  Molnar argues that because the former employee allegedly thought the allegations against him did not constitute sexual harassment, this shows "the charges against him rest on a fabricated foundation." (Doc. 17 at 9.)

Any suggestion that Limesand is no longer employed at PSC because of her alleged determination that Molnar's behavior did not rise to the level of sexual harassment is unequivocally false.  ( *Id*., ¶ 12-13.)  That said, issues surrounding her employment are confidential human resources information, and the PSC cannot comment on those issues unless and until Limesand waives her privacy rights, or this Court determines the merits of public disclosure outweigh those rights.  *See, e.g., Tschida*, 924 F.3d at 1304; *Moe*, 371 P.3d at 420-422; *Phillips,* 307 F.3d at 1212.  As Limesand is no longer employed by the PSC, Defendants are unaware of her position in that regard.

Regardless, there is no suggestion or allegation, nor could there be, that Limesand was part of the completed investigation against Molnar, or privy to all the CMS investigative materials.  (*See generally id*.)  Because this information is confidential, and because the State is unaware whether Limesand has waived her

7

privacy rights, Defendants are not currently at liberty to elaborate further.  That said, Molnar's failure to allege that Limesand's opinion was based on the same information available to the Commissioners who imposed the subject sanctions is telling.

Finally, there are no grounds to argue Limesand's alleged opinion is determinative of whether sexual harassment did, in fact, occur, or whether Molnar was retaliated against for protected speech.  It may well be that every PSC employee who worked in the PSC's offices at the pertinent time has an opinion about whether Molnar engaged in unlawful retaliation and harassment.  That is largely beside the point.  For purposes of the requested preliminary injunction, the question is not whether select employees thought Molnar was engaging in sexual harassment or other misbehavior, but whether Molnar is likely to establish (1) he engaged in constitutionally protected activity, (2) he was subjected to materially adverse action by the PSC Commissioners, and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.  *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024); *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477-479 (2022).  In other words, Limesand's opinions— whatever they may be—will not tip the scales one way or the other on whether Molnar is likely to succeed on the merits.  *See Rovio Entm't Ltd*, 907 F. Supp. 2d at 1100 (denying motion for expedited discovery where the plaintiff "ha[d] not

8

clearly shown that the information it seeks [in the defendants' depositions] is needed on an expedited basis to obtain a preliminary injunction").

Good cause is lacking for an expedited deposition of Limesand, particularly before the June 18, 2026 preliminary injunction hearing. The discovery is unnecessary to resolve the motion for preliminary injunction, and the burden on defendants to prepare for and participate in the deposition on such short notice would be great, even assuming arguendo that Limesand would agree to waive her privacy rights and her appearance could be secured before the hearing. *See id*.

## CONCLUSION

For the reasons stated, Molnar's Motion for Expedited Discovery should be denied.

DATED this 15th day of June, 2026.   BOONE KARLBERG P.C.

*/s/ Natasha P. Jones*
Natasha P. Jones
*Attorneys for Defendants*

9

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E), Local Rules of the United States District Court, District of Montana, I hereby certify that the textual portion of the foregoing brief uses a proportionally spaced Times New Roman typeface of 14 points, is double-spaced, and contains approximately 1777 words, excluding the parts of the brief exempted by L.R.7.1(d)(2)(E).

DATED:  June 15, 2026        BOONE KARLBERG P.C.

 /s/ Natasha P. Jones
Natasha Prinzing Jones
*Attorneys for Defendants*