Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
P.O. Box 9199
Missoula, MT 59807-9199
Telephone:  (406) 543-6646
npjones@boonekarlberg.com
tleonard@boonekarlberg.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| BRAD MOLNAR,<br><br>        Plaintiff,<br><br>vs.<br><br>JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission;<br><br>        Defendants. | Cause No. CV-26-41-H-DWM<br><br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

## INTRODUCTION

Changing tack at the last minute, Plaintiff Brad Molnar ("Molnar") now effectively concedes that the names of witnesses in the investigation into his misconduct should remain redacted.  (Doc. 35, p. 2-3 ("Commissioner Molnar does not seek unredacted names.").) Instead of doubling down on that untenable

position, he now relies on faulty legal arguments to argue the redactions erase any good cause or compelling reasons for the underlying investigative reports to remain under seal.  He is incorrect.  Whether redacted or unredacted, the same dangers presented by public disclosure of the reports remain.  That disclosure would violate the privacy rights of those who stepped up and participated in the investigation, and would subject them to further public attack and retaliation.

In addition, this Court should issue a protective order prohibiting Molnar from filing Tina Limesand's ("Limesand") confidential personnel records. Limesand has confirmed she is *not* waiving her privacy rights, and Molnar should be prevented from further trampling upon the rights of Limesand or any other third party employee.  Defendants' Motion for Protective Order should be granted.

## ANALYSIS

Instead of providing legal or factual support for his demand to unseal the underlying investigative reports, Molnar moves the goal posts.  He now claims he does not seek the reports' unredacted names.  (Doc. 35, p. 3.)  As set forth below, this <u>directly contradicts Molnar's previous demands to Defendants</u>.  In any case, regardless of Molnar's new concession that the names should remain redacted, there are still compelling reasons for the underlying investigative reports to remain under seal.

As early as May 22, 2026, Molnar's counsel wrote to the PSC's chief legal counsel, Amanda Webster, to demand "complete, unredacted copies of both CMS reports by close of business today" and stating "[i]f you decline to do so, please state your legal basis for withholding them." (Monforton Emails, attached as **Exhibit A**, at p. 2 (emphasis added).) When the PSC declined, Molnar's counsel fired back that "[y]our decision to withhold unredacted copies of reports that are being used to suspend your client's political opponent is legally indefensible." (*Id.* at p. 4 (emphasis added).)

On May 29, 2026, Molnar's counsel again demanded that although he had "redacted copies of the CMS reports[,] [w]e now require unredacted copies of both reports." (*Id.* at p.2 (emphasis added).) Molnar's counsel went on to cite to this Court's preliminary injunction hearing on June 18, 2026 to support his need for the unredacted names and stated and that Molnar's preparation for that hearing "requires knowing the identities of Commissioner Molnar's accusers" before claiming "[w]e cannot investigate, cross-examine, or even evaluate those motives" of the individuals whose names remained redacted "if their identities remain hidden behind redactions. (*Id.* at p. 2.) Molnar's counsel then again demanded "unredacted copies of both CMS reports no later than 5:00 p.m. on Monday, June 1." (*Id.* (emphasis added).)

In response to these repeated demands for an unredacted Underlying Investigation, the undersigned counsel, and the Response Team's counsel, Amy Christenson, communicated to Molnar's counsel that Defendants intended to seek a protective order.  When Molnar's counsel stated that Molnar intended to file the redacted reports, the undersigned counsel requested he do so under seal, pursuant to the pending protective order.

Given this background and his repeated demands for names, Molnar's re-tooled argument and characterization of his position is disingenuous.  It further betrays both the weakness of his argument to unseal the redacted investigation and Molnar's true motives—to publish the investigation to the public and gratify his own personal spite to those he perceives have wronged him.

Molnar now concedes the names within the Underlying Investigation should remain redacted: "The redacted names stay redacted on unsealing" and "Commissioner Molnar does not seek unredacted names." (Doc. 35, p. 2-3.)  Even with the names redacted, however, the Underlying Investigation should remain under seal.  Even when redacted, names can be discovered and used for improper purposes—which is precisely what Molnar seeks to do here.  *U.S. v. Eklund*, No. 3:18-cr-00035-SLG, 2021 WL 1269115 *1 (D. Alaska Apr. 6, 2021).

*Eklund* is particularly apt to this case.  *See id.*  There, a party sought to unseal a report which contained information on multiple third parties relating to

sexual abuse, domestic violence, drug use, criminal history, and medical and mental health, to allow the public to view the "lies" within it. *Id.* *1. The report used only the first names of adults and the initials of minors. *Id.* The court found that party appeared to seek to unseal the report due to "improper purposes, such as the use of record the use of records to gratify private spite, promote public scandal, [or] circulate libelous statements" and noted that "although the full names of the third parties are redacted, their identities are easily ascertainable based on other information in the report." *Id.* **1-2 (emphasis added). Accordingly, the court ordered the report, with redactions, remain sealed. *Id.* *2.

Here, Molnar has demonstrated that the identities of individuals can be ascertained from the Underlying Investigation, even with their full names redacted. Molnar has specifically stated that he has identified Tina Limesand ("Limesand") from the Underlying Investigation. As further demonstrated in Defendants' opening brief, there is ample information within the report for Molnar—or any member of the inquiring public—to identify other witnesses. Thus, permitting Molnar to release the redacted reports to the public would permit him to escalate his campaign of retaliation against PSC employees who took part in the investigation in the public sphere.

The individuals who participated in the investigation have important federal and state constitutionally protected interests in information privacy which they

5

have not waived.  *Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019); *Moe v. Butte-Silver Bow Cnty.*, 371 P.3d 415, 420-422 (Mont. 2016).  Molnar's allusion that state employees only possess such privacy interests in their own personnel records is not supported by his citation to *Tschida*, the holding and dicta of which contains no such restraint.  924 F.3d at 1304.

Lastly, as it relates to Limesand's personnel records, Molnar argues "she has been publicly identified as a terminated PSC employee."  This statement is not followed by a citation to any evidence, because it is <u>false</u>.  Apart from the fact that Limesand is no longer employed by the PSC, her personnel records, including any information relating to her departure from the PSC, remain confidential.  Limesand has not waived her privacy rights.  Indeed, she contacted the PSC's Executive Director last night, asking why she was named in court documents and stating she has *not* waived her privacy rights.  (Second Declaration of Jamey Petersen, **Exhibit B**.)

The only person to publicly suggest Limesand was terminated, or to discuss the alleged reasons therefore, is Molnar himself.  Needless to say, Molnar cannot destroy a third party's privacy rights by unilaterally disclosing confidential information.  The PSC maintains the confidentiality of employees' personnel files, including Limesand's.  (Ex. B.)  Absent an individual privacy waiver, personnel information is only provided to Commissioners on an as-needed basis, is marked

"confidential," and is only discussed in closed-session PSC meetings.  (Ex. B.)

Molnar's blatant disregard for Limesand's privacy and PSC personnel policy

represents yet another example of his flouting the rules.

## CONCLUSION

For the foregoing reasons, the Court should issue a protective order that

restricts production of the investigative reports to copies with redacted names, and

further requires that those reports remain under seal.

DATED this 16th day of May, 2026.

BOONE KARLBERG P.C.

*/s/ Natasha P. Jones*
Natasha P. Jones
Thomas J. Leonard
*Attorneys for Defendants*

7

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 1,221 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED this 16th day of June, 2026.

BOONE KARLBERG P.C.

*/s/ Natasha P. Jones*
Natasha P. Jones
*Attorneys for Defendants*