Natasha Prinzing Jones
Thomas J. Leonard
BOONE KARLBERG P.C.
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
npjones@boonekarlberg.com
tleonard@boonekarlberg.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| BRAD MOLNAR,<br><br>Plaintiff,<br><br>vs.<br><br>JEFF WELBORN, in his official capacity as a member of the Montana Public Service Commission; JENNIFER FIELDER; in her official capacity as a member of the Montana Public Service Commission; ANNIE BUKACEK, in her official capacity as a member of the Montana Public Service Commission;<br><br>Defendants. | Cause No. CV-26-41-H-DWM<br><br>**DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |

In accordance with L.R. 16.2(b), Rules of Procedure, United States District Court, District of Montana, Defendants submit their Preliminary Pretrial Statement.

**BACKGROUND**

Molnar took office as a commissioner in January 2025. Soon thereafter—as early as February 2025—the PSC began receiving informal complaints about Molnar's unprofessional conduct, including comments of a sexual and harassing nature.

Before a formal investigation was considered, multiple efforts were made to address Molnar's behavior through ordinary workplace channels, including informal intervention, policy discussions, training, peer-to-peer feedback, attempts to address the conduct at the lowest appropriate level, documentation, and written warnings. These efforts were unsuccessful.

Molnar refused to even acknowledge that the PSC's Code of Conduct applied to him. He refused to sign the routine acknowledgment that he received the PSC's Internal Policy Manual ("IPM"), provided to all new Commissioners during their orientation, insisting he was not bound by the policies. He threatened to put the matter on the next Commission agenda and "blow things up in a grand fashion."

In May 2025, two formal complaints were submitted against Molnar. The first came from PSC Commissioner Anne Bukacek ("Bukacek"). She reported, among other things, that Molnar had suggested the PSC have "topless Tuesdays." She also relayed how Molnar had commented there were certain areas in China

where "they have the most beautiful women" because it "rains all the time, so there's no sun, so they don't get old and wrinkly." In a private conversation with Bukacek one night in her office, Molnar made unwelcome comments about watching girls in bikinis as a teenager, demeaningly mocked his own wife, and bragged about beating a man within an inch of his life.[1] Molnar also maliciously misrepresented Bukacek, and engaged in behavior that was "dismissive, derisive and otherwise abusive."

The second complainant similarly complained about Molnar's unprofessional, hostile, and bullying conduct. Molnar referred to the employee's attempts to help him with technology issues as "limp excuses" and said the "State IT Team needs to be pruned." This and previous instances of intimidating behavior left the employee feeling demeaned and scared, leading to many sleepless nights and anxiety.

Montana law *requires* complaints alleging harassment in the workplace be investigated, and sets procedures for handling complaints. *See* Admin. R. Mont. 2.21.4001, *et. seq*. Pursuant to those procedures and internal policy, the Response

[1] Molnar similarly boasted to others about past violent physical altercations with individuals he believed had wronged him. He told then PSC Executive Director Amanda Lake ("Lake") about beating a man to death, assaulting a man in a Wal Mart parking lot which resulted in his chipped teeth, and his background as a mixed martial artist.

Team determined an external investigation was necessary, as Molnar was PSC President and a supervisor of some members, thus creating an actual or perceived conflict. Communication and Management Services, LLC ("CMS") was retained to perform the investigation, and external counsel was retained as to serve as CMS's liaison. Importantly, this process commenced *months* before the NorthWestern Energy Group and Black Hills Corporation merger was announced on August 19, 2025.

On July 2, 2025, another employee—the third—submitted a discrimination complaint against Molnar. That employee recounted alleged derogatory comments about staff and commissioners that left her feeling "violated" and "helpless." On at least one occasion, the stress of her interactions with Molnar caused her to cut her workday short and leave the office.

After Molnar was notified of the investigation, his behavior significantly worsened. Conceding he was "livid" about the investigation, he lashed out at PSC personnel, promising to use his personal resources and attorneys "to silence people who bring forward 'stupid' complaints." He vowed to "take out" or "take down" whomever made accusations against him. He repeatedly disparaged complainants and participants in the investigation, threatened to withhold payment from the investigator and legal counsel, tried to block staff from advising the PSC, and pressed staff for confidential information.

PSC's Executive Director at the time viewed Molnar's behavior as an alarming workplace safety issue. Her extensive experience in law enforcement, investigations and leadership made her attentive to escalating conflict and pathway-to-violence indicators. Molnar exhibited increasing grievance fixation, perceived victimization, externalization of blame, escalating hostility toward perceived adversaries, threats of retaliation, distrust of colleagues, efforts to identify and punish those involved in protected activity, public campaigns against perceived opponents, refusal to accept responsibility for the conduct being reviewed, and conduct that caused fear, concern, and disruption within the workplace.

During the course of its investigation, CMS interviewed the complainants and a host of other witnesses, and conducted an exhaustive review of the documentary evidence and relevant policies, administrative rules, and statutes. In addition, numerous attempts were made to secure Molnar's participation, but his attorney ultimately closed the door on these attempts, stating "Commissioner Molnar will not participate in this investigation."

In August 2025, CMS issued its Investigation Report. It found Molnar had violated PSC Policy 2.12 (EEO, Non-discrimination, and Harassment Prevention Policy), 2.2.6 (threatening, abusive, obscene, or derisive behavior), 2.2.3 (commissioner professional standards), 2.4 (impropriety and the appearance of

impropriety), and 2.13 (retaliation against individuals who report policy violations).

In light of the escalating behaviors and efforts to stymie the investigation, the Response Team decided to ask Governor Gianforte to temporarily suspend Molnar while the investigation continued. A formal request was submitted on August 20, 2025. Notably, the decision to request Molnar's suspension was made several days before the proposed NorthWestern Energy merger was announced.

Unfortunately, Molnar's bullying only intensified. In August through October, 2025, PSC managers received more reports of troubling behavior and workplace safety concerns. Three more formal complaints against Molnar were submitted, bringing the total to six. Staff changed schedules and work locations to avoid Molnar, on site security was increased, and the CMS was asked to review the additional reports.

On September 4, 2025, Molnar filed a lawsuit in Montana state district court against Fielder and the Governor to stop consideration of his suspension. The court denied Molnar's motion for a preliminary injunction, finding Molnar's claims about a connection to PSC regulatory matters were "purely speculative."

The PSC voted to remove Molnar as president on October 21, 2025. On October 28, 2025, Commissioner Jeff Welborn ("Wellborn") was elected as his replacement.

The very next day, Molnar filed an ethics complaint against Bukacek with the Commission on Political Practices ("COPP"), falsely claiming she was copying patient files on government equipment. A related complaint against Bukacek was filed with the Montana Board of Medical Examiners. Both unfounded complaints were dismissed. As the COPP determined, Molnar's claims were speculative and unsupported by evidence.

On October 30, 2025, the Response Team received a *seventh* formal complaint against Molnar—this one from then PSC Executive Director Lake—alleging Molnar retaliated against Commissioner Bukacek for participating in the investigation and voting to remove Molnar as President.

In December 2025, CMS issued its second report, entitled "Retaliation Investigation Report," which addressed the fourth, fifth, and sixth complaints. Once again, numerous policy violations were substantiated, including of IPM 2.13 (retaliation); 2.2.6 (threatening, abusive, obscene, or derisive behavior); and 2.7.1.6 (commissioners expected to be "patient, dignified, and courteous").

On December 26, 2025, Governor Gianforte declined the request to suspend Molnar, concluding Molnar's removal as president was enough to limit further interference while the investigation continued. The Governor made clear his decision did not excuse Molnar's conduct, and the PSC could finish its investigation and make its own decision under its policy manual.

The Response Team issued its report on May 1, 2026. It found that although the CMS investigation did not include all of Molnar's misconduct, it did confirm multiple policy violations. Additionally, because the seventh complaint against Molnar had been submitted after the contractual scope of CMS's investigation had closed, the Response Team devoted a portion of the report to independently addressing that complaint, finding the most recent allegations of retaliation were substantiated.

The Response Team found that Molnar's misconduct had been pervasive since February 2025, and included unprofessional conduct toward staff, repeated unwelcome sex-based comments, retaliation against complainants and others involved in the investigation, and misrepresentations of coworkers and facts. The report further noted that Molnar "chose non-cooperation, escalation, obstruction, diversion, and retaliation," which turned "a relatively simple, confidential HR matter into a public controversy of substantial cost, complexity and severity." The report confirmed the investigation bore no relation to any regulatory decision, pointing out the investigation's commencement, and the decision to seek Molnar's suspension, pre-dated the announcement of the NorthWestern Energy merger.

The Response Team recommended: (1) an immediate remote-work requirement for Molnar to mitigate the risk of further retaliation and code of conduct violations, (2) consideration of a public censure, (3) a request that the

governor suspend Molnar for good cause, and (4) probation/monitoring for the remainder of Molnar's term. A hearing was scheduled for May 6, 2026. In advance, on May 1, 2026, the Response Team report and redacted copies of the CMS reports were provided to all commissioners by email.

On May 6, 2026, the PSC considered the investigation and the Response Team recommendations with input from Commissioner Molnar. The PSC adopted the Response Team recommendations including a remote work requirement, and later followed the recommendation to seek Molnar's suspension, presenting its request to the Governor on May 21, 2026.

Over the course of these events, the PSC lost multiple employees who resigned to escape Molnar. The effect on morale and retention has been significant. Multiple employees have expressed fear about what they might experience if Molnar learns they raised concerns about his behavior or participated in the investigative process.

Molnar filed this action on May 11, 2026, seeking declaratory and injunctive relief to overturn the sanctions against him. The same day, he filed an Emergency Motion for Temporary Restraining Order ("TRO"). The Court granted the TRO later that day, temporarily enjoining the PSC from imposing the remote work requirement "to the extent that [Molnar] must be permitted to enter the hearing room and participate as a Commissioner for the duration of the NorthWestern

Energy/Black Hills merger proceedings." (Doc. 9 at 7.) Molnar was allowed to attend and participate in the merger proceedings.

After the proceedings concluded, Molnar filed a Motion for Preliminary Injunction, demanding immediate "full access" to the PSC office building. (Doc. 13.) After that motion was fully briefed and argued, this Court issued its order denying the motion on June 25, 2026. (Doc. 44.)

On July 7, 2026, Molnar filed a new action in Montana state district court, *Molnar v. Montana Public Service Commission, et al., Montana First Judicial District Court*, Lewis and Clark County, DV-25-2026-0000475-IJ. Molnar sued the PSC and Defendant Commissioners in their official capacities, claiming Defendants had no authority to impose the work restrictions upon him, and that they did in violation of his due process rights.

On July 9, 2026, Governor Gianforte, exercising authority under Mont. Code Ann. § 69-1-113, suspended Molnar for one year, with his return contingent on completing the trainings the PSC requires.

Molnar amended his state court complaint on July 13, 2026, adding the Governor as a defendant and challenging the Governor's suspension on multiple grounds.

## JURISDICTION AND VENUE

Molnar invokes this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, premised on a single claim under 42 U.S.C. § 1983 for alleged violation of the First and Fourteenth Amendments to the United States Constitution. Defendants' admission of federal-question jurisdiction does not waive, and Defendants expressly preserve, their pleaded threshold defenses that this action may not proceed against them. Venue is proper, as the event giving rise to the claim occurred in Helena, Montana. 28 U.S.C. § 1391.

## FACTUAL AND LEGAL BASIS OF EACH DEFENSE

### 1. There was no underlying constitutional violation.

**Factual basis:** The sanction was imposed for Molnar's misconduct, not for protected speech. From February 2025 forward, agency managers received complaints of unprofessional and harassing conduct; the independent CMS investigation and the Response Team Report substantiated repeated unwelcome sex-based comments, retaliation against complainants, and misrepresentation of colleagues. The Commission adopted the Report's recommended remote-work requirement on May 6, 2026 to mitigate the risk of further retaliation and Code of Conduct violations.

**Legal basis:** Section 1983 provides no remedy absent an underlying constitutional violation. *E.g.*, *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir.

2024); *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477-479 (2022). Because Molnar was not subjected to adverse action for protected speech, no First Amendment violation occurred and the claim fails.

**2. The conduct at issue was not protected activity.**

**Factual basis:** The conduct underlying the investigation and Report consisted of harassment and threats toward PSC staff — including the "topless Tuesdays" remark, threats to "take out" those who complained, and boasts of past violence — not political expression.

**Legal basis:** Private harassment of coworkers is not speech that enhances the public's evaluation of government and is not protected activity. *E.g., Joiner v. Callaghan,* 2025 U.S. Dist. LEXIS 121180, *12-13 (C.D. Cal. 2025); *Jeffrey Katz Chiropractic Inc. v. iBeat, Inc.*, 2020 U.S. Dist. LEXIS 140329, at *3 (N.D. Cal. May 26, 2020) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005)). Likewise, conduct exercising a commissioner's official powers implicates "governmental mechanics" and carries no First Amendment protection. *Linthicum*, 94 F.4th at 894-895; *Marquez v. City of Cypress*, 2025 U.S. Dist. LEXIS 34971, *13-17, 2025 LX 116742, 2025 WL 636676; *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011). Molnar therefore cannot satisfy the first element of his claim.

**3. There was no materially adverse action.**

**Factual basis:** The Commission did not strip Molnar of office, his vote, or any electoral prerogative. It adopted a remote-work requirement while expressly preserving his participation in all PSC proceedings; he attended and participated in the merger hearing, and he may re-enter the building upon coordination with the Response Team once the risk of further retaliation is mitigated. Montana law permits PSC business to be conducted remotely, and remote participation is full participation.

**Legal basis:** For elected officials, only action that materially interferes with the ability to do the job—depriving the official of authority enjoyed by virtue of election—is actionable; de minimis deprivations are not. *Boquist*, 32 F.4th at 776; *Blair v. Bethel Sch. Dist.,* 608 F.3d 540, 544 (9th Cir. 2010); *Wilson*, 595 U.S. at 477-47916; *Skillicorn v. Dickey*, 2024 U.S. Dist. LEXIS 155307, *16-25 (D. Ariz. 2024). Adopting the Report's findings and imposing a remote-work condition that leaves Molnar's authority intact is not a materially adverse action.

**4. There was no retaliatory motive.**

**Factual basis:** The investigation commenced in June 2025, and the Response Team decided a suspension complaint was necessary and began drafting it on August 15, 2025—before the North Western Energy/Black Hills merger was announced on August 19, 2025. The Court found the cause-and-effect timeline

Molnar alleges is unsubstantiated; the workplace investigation and the merger were independent, contemporaneous developments.

**Legal basis:** Defendants did not adopt the Report's findings and recommendations in response to any protected speech, defeating the causation element of the retaliation claim. *Boquist*, 32 F.4th at 777.

**5. The same action would have been taken absent any retaliatory motive.**

**Factual basis:** The Report documented seven complaints over eleven months and a sustained pattern of unprofessional, policy-violating conduct, including repeated unwelcome sex-based remarks, threats, and retaliation against those who participated in the process; employees resigned to escape Molnar and reported workplace-safety concerns. The Court found that even excising any protected activity, Defendants would have imposed the sanction based on Molnar's misconduct and harassment of staff.

**Legal basis:** Once a prima facie case is shown, the burden shifts to the defendant to demonstrate it would have taken the action anyway. *Boquist*, 32 F.4th at 778. Action colored by some bad motive is not a constitutional tort if it would have been taken regardless; if retaliation was not the but-for cause, the claim fails. *Hartman v. Moore*, 547 U.S. 250 (2006). Defendants had an objectively legitimate need to adopt the Report's recommendations and would have done so absent any retaliatory motive, so any such motive was not a but-for cause of the sanction.

**6. The claims are nonjusticiable.**

**Factual basis:** On July 9, 2026, Governor Gianforte, exercising authority under Mont. Code Ann. § 69-1-113, suspended Molnar from office from one year, with his return contingent on completing the trainings the PSC requires. That suspension is the independent act of the Governor, not of Defendants. Molnar's claim seeks restoration of physical access to the PSC building so he can perform his duties as a commissioner; while suspended, he has no commissioner duties to perform, in person or remotely. The only proceeding for which Molnar sought emergency access—the May 2026 merger hearing—he attended in person under the Court's temporary restraining order, and it has concluded.

**Legal basis:** Article III requires a live controversy as to which effective relief can be granted; a case becomes moot when the issues are no longer live or the plaintiff lacks a legally cognizable interest in the outcome. *Ruiz v. City of Santa Maria*, 160 F.3d 543 (9th Cir. 1998). A plaintiff seeking prospective injunctive relief must be in a position to benefit from it; where no effective relief can be granted, the claim is moot. *San Lazaro Ass'n, Inc. v. Connell*, 286 F.3d 1088 (9th Cir. 2002). Because Molnar cannot serve as a commissioner during the one-year suspension and until he completes the PSC trainings, an order restoring building access would afford him no effective relief, and his claim is moot. The "capable of repetition, yet evading review" exception does not apply because it is confined to

exceptional situations where the challenged action is too short in duration to be litigated and there is a reasonable expectation the same party will be subjected to it again. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162 (2016). The remote-work requirement is of indefinite duration, the one-year suspension leaves ample time to litigate, and any renewed application of the building restriction upon Molnar's eventual reinstatement is speculative, not the reasonable expectation or demonstrated probability the exception demands.

**7. Eleventh Amendment immunity applies.**

**Factual basis:** Each Defendant is sued solely in an official capacity as a member of the PSC, an agency of the State of Montana; an official-capacity suit is a suit against the State itself.

**Legal basis.** The Eleventh Amendment bars suit in federal court against the State of Montana, sued here through its officials in their official capacities, absent a recognized exception. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

**8. The PSC is not a "person" under § 1983.**

**Factual basis:** Defendants are sued only in their official capacities as state officials.

**Legal basis:** Neither a State nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. *Will*, 491 U.S. at 58.

**9. Molnar has failed to satisfy *Ex parte Young*.**

**Factual basis:** The relief Molnar seeks, and the connection of each Defendant to the challenged conduct, are addressed in the pleadings; Defendants dispute that the requirements for suing state officials in their official capacities are met.

**Legal basis:** Suit against state officials in their official capacities in federal court is permitted only within the narrow exception of *Ex parte Young*, which requires an ongoing violation of federal law, a sufficient connection between the named officer and enforcement of the challenged action, and prospective relief. *Ex parte Young*, 209 U.S. 123 (1908).

**10. The Court should abstain under *Younger*.**

**Factual basis.** Defendants' defense is premised on an ongoing state proceeding concerning the same subject matter.

**Legal basis.** Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts abstain from interfering with pending state proceedings absent extraordinary circumstances showing great and immediate irreparable injury. Comity and federalism counsel against federal interference where an adequate state forum exists. *Id*.

## COMPUTATION OF DAMAGES

This is a case for injunctive relief. Defendants are not seeking damages from Molnar, although they are entitled to lawful costs of suit and/or attorney fees.

## RELATED STATE AND FEDERAL LITIGATION

1. *Molnar v. Gianforte, et al.,* Montana First Judicial District Court, Lewis and Clark County, DV-25-2025-0000535-DK (Hon. Mike Menahan).

The case was filed on September 4, 2024 against Governor Gianforte and PSC Commissioner Jennifer Fielder and related to the first PSC request to suspend Molnar. Molnar's Motion for Preliminary Injunction was denied. The case, though moot, has yet to be dismissed.

2. *Molnar v. Montana Public Service Commission, et al., Montana First Judicial District Court*, Lewis and Clark County, DV-25-2026-0000475-IJ (Hon. Mike Menahan)

The case was filed on July 7, 2026 against the PSC and Defendant Commissioners in their official capacities, challenging the PSC's remote work restrictions. After Molnar's suspension by the Governor, he amended the complaint to add the Governor as a defendant and challenge the suspension. Molnar's motion for preliminary injunction is fully briefed, argued, and is pending in that action.

## PROPOSED ADDITIONAL STIPULATIONS OF FACT

Defendants are not proposing additional stipulations of fact at this time.

## DEADLINE TO JOIN PARTIES AND AMEND PLEADINGS

Defendants suggest November 30, 2026, as an appropriate deadline for parties to amend pleadings.

## CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

Those controlling issues of law suitable for pretrial disposition include:

1. Whether the conduct on which the sanctions were based constitutes constitutionally protected activity.

2. Whether the remote-work requirement is a materially adverse action for an elected official.

3. Whether retaliation was not the but-for cause of the sanction, defeating the claim as a matter of law.

4. Whether the State of Montana, sued through Defendants in their official capacities, is a "person" subject to suit under 42 U.S.C. § 1983.

5. Whether the Eleventh Amendment bars this official-capacity action.

6. Whether Molnar has satisfied the requirements of *Ex parte Young*.

7. Whether the *Younger* abstention doctrine requires dismissal or a stay.

8. Whether Molnar's claims are moot or otherwise nonjusticiable.

**PEOPLE WITH KNOWLEDGE OR INFORMATION**

Those people currently believed to have knowledge or information include the following:

1. Brad Molnar — Plaintiff; PSC Commissioner (suspended); resident of Yellowstone County, Montana. Information: his workplace conduct; the remote-work sanction and its asserted effect on his duties; his claim of retaliatory motive.

2. Jeff Welborn — Defendant; PSC President; resident of Beaverhead County, Montana. Information: complaints of Molnar's misconduct; initiation and course of the investigation; the May 6, 2026 vote adopting the Response Team Report; the terms of Molnar's hearing access; the November 2025 communications memo; the August 2025 and May 2025 complaints to the Governor.

3. Jennifer Fielder — Defendant; PSC Vice-President and Response Team member; resident of Sanders County, Montana. Information: complaints of Molnar's misconduct; initiation and course of the investigation; the May 6, 2026 vote adopting the Response Team Report; the terms of Molnar's hearing access; the November 2025 communications memo; the August 2025 and May 2025 complaints to the Governor.

4. Annie Bukacek — Defendant; PSC Commissioner; resident of Flathead County, Montana. Information: complaints of Molnar's misconduct; initiation and course of the investigation; the May 6, 2026 vote adopting the

Response Team Report; the terms of Molnar's hearing access; the November 2025 communications memo; the August 2025 and May 2025 complaints to the Governor; her observations of Molnar's sex-based remarks and misconduct; her formal complaint against Molnar; the subject of Molnar's complaint to the Commissioner of Political Practices.

5. Randy Pinocci — PSC Commissioner. Information: Commission voting matters referenced by Molnar; Holley complaint against Bucacek.

6. Alana Lake — former PSC Executive Director. Information: workplace misconduct, threats, and safety concerns; Molnar's retaliation during the investigation; her resignation.

7. Tina Limesand — former PSC Human Resources Director. Information: her asserted view that the allegations against Molnar did not constitute "sexual harassment."

8. Jamey Peterson — PSC Executive Director. Information: the January 2026 directive routing media inquiries through the communications office.

9. Amy Christensen — outside legal counsel to the Response Team; Helena, Montana. Information: the investigation's structure, confidentiality protocols, and communications with Molnar's counsel regarding the interview.

10. Catherine ("Cat") Holley — third-party complainant. Information: her complaint to the Montana Board of Medical Examiners alleging Bukacek copied

medical-practice documents at the Commission, naming Molnar and Pinocci as witnesses.

11. Communications and Management Services ("CMS") — outside workplace investigator(s) retained June 6, 2025. Information: the conduct and findings of the independent investigations into the complaints against Molnar.

12. Witnesses identified in CMS report - workplace misconduct, threats, and safety concerns; Molnar's retaliation during the investigation; resignations.

Defendants reserve the right to supplement or amend this list as discovery proceeds. Addresses and telephone numbers will be provided to all counsel on request.

**DEFENSE AND INDEMNITY**

The State is self-insured.

**PROSPECTS FOR SETTLEMENT**

The prospects for settlement are not good. Molnar has been suspended by Governor Gianforte. Molnar has refused to acknowledge any responsibility or make even minimal efforts to resolve the issues giving rise to this case. The PSC has outlined reasonable requirements for Molnar to complete so as to return to non-remote work, but Molnar has not shown any interest.

## SUITABILITY FOR SPECIAL PROCEDURES

This Court's June 16, 2026 Order (Doc. 38) directed that any references to identifying information in the unredacted reports must be filed under seal, as must the personnel records of former PSC employee Limesand. Because Molnar continues to disregard former employee Limesand's privacy rights by publicly disclosing what he asserts to be the circumstances of her departure from the PSC, further procedures may be required to ensure her privacy is protected in this litigation.

DATED this 27th day of August, 2026.

BOONE KARLBERG P.C.

*/s/ Natasha P. Jones*
Natasha P. Jones
*Attorneys for Defendants*